*In re* MICHIGAN CABLE TELECOMMUNICATIONS ASSOCIATION
COMPLAINT

Docket No. 209011. Submitted September 9, 1999, at Lansing. Decided
February 22, 2000, at 9:05 A.M.

Michigan Cable Telecommunications Association and others filed a
complaint in the Public Service Commission against Ameritech
Michigan, alleging that Ameritech Michigan, a wholly owned sub-
sidiary of Ameritech Corporation, violated subsection 305(3) of the
Michigan Telecommunications Act, MCL 484.2305(3); MSA
22.1469(305)(3), which prohibits a provider of a rate-regulated ser-
vice that has not complied with subsection 304a of the act, MCL
484.2304a; MSA 22.1469(304a), from providing that service in com-
bination with an unregulated service at a price that does not
exceed the total service long run incremental cost of each service.
The alleged violation involved the acceptance by Ameritech Michi-
gan of AmeriChecks as payment for its services, including basic
local exchange service, which is a rate-regulated service. The
AmeriChecks, which were payable to the order of "Ameritech,"
were issued by Ameritech New Media, Inc., another wholly owned
subsidiary of Ameritech Corporation, to prospective subscribers to
Ameritech New Media's cable television service. The commission
found Ameritech Michigan in violation of subsection 305(3),
ordered it to cease and desist from further violations, and ordered
it to pay the complainants' costs, including attorney fees. Amer-
itech Michigan appealed.

The Court of Appeals *held*:

1. The commission's order holding that Ameritech Michigan vio-
lated subsection 305(3) is lawful and reasonable. Ameritech Michi-
gan was not in compliance with subsection 304a during the rele-
vant time and was thus subject to subsection 305(3). The evidence
supported the commission's finding that the acceptance by Amer-
itech Michigan of AmeriChecks as payment for basic local
exchange service resulted in the combining of a regulated service
with an unregulated service at a price that did not exceed the total
service long run incremental cost of each service, in violation of
subsection 305(3).

2. The commission did not shift the burden of proof to Ameritech Michigan in requiring it to overcome the conclusions contained in the commission staff's proposal for decision.

3. The award of attorney fees must be reversed in the absence of authorization in the Michigan Telecommunications Act for awards of attorney fees, except where a party's position was frivolous.

Affirmed in part and reversed in part.

TELECOMMUNICATIONS — MICHIGAN TELECOMMUNICATIONS ACT — BASIC LOCAL EXCHANGE PROVIDERS — RATE-REGULATED SERVICES — UNREGULATED SERVICES — TOTAL SERVICE LONG RUN INCREMENTAL COST.

A basic local exchange provider that has not restructured its rates for basic local exchange, toll, and access services as approved by the Public Service Commission may not provide a rate-regulated service in combination with an unregulated service at a price that does not exceed the total service long run incremental cost of each service; a prohibited combination occurs where a basic local exchange provider that is a wholly owned subsidiary of a corporation accepts as payment for basic local exchange services checks issued by another wholly owned subsidiary of the corporation to prospective subscribers to that subsidiary's cable television service (MCL 484.2304a, 484.2305[3]; MSA 22.1469[304a], 22.1469[305][3]).

*Dickinson, Wright, PLLC* (by *Joseph A. Fink, Peter H. Ellsworth, John M. Dempsey,* and *Jeffery V. Stuckey*) and *Michael A. Holmes,* for Ameritech Michigan.

*Jennifer M. Granholm,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges* and *Patricia S. Barone,* Assistant Attorneys General, for the Public Service Commission.

*Fraser Trebilcock Davis & Foster, P.C.* (by *David E.S. Marvin* and *Michael S. Ashton*), for Michigan Cable Telecommunications Association and others.

Before: MURPHY, P.J., and GAGE and WILDER, JJ.

PER CURIAM. Appellant Ameritech Michigan appeals as of right from an order of the Michigan Public Service Commission (PSC) ordering it to cease and desist

from further violations of the Michigan Telecommunications Act (MTA), MCL 484.2101 *et seq.*; MSA 22.1469(101) *et seq.*, and requiring it to pay the reasonable expenses, including attorney fees, incurred by appellees Michigan Cable Telecommunications Association (MCTA) and others in bringing the complaint. We affirm in part and reverse in part.

In May 1997 Ameritech New Media, Inc. (New Media), a wholly owned subsidiary of Ameritech Corporation, launched a program to promote its Americast cable television service. New Media offered "AmeriChecks" to prospective customers to induce them to subscribe to the cable television service. Depending on the terms of a subscription to the cable television service, a customer would receive six or twelve AmeriChecks. The AmeriChecks, written in $10 denominations, were predated, presigned, and made payable to "Ameritech." The AmeriChecks could be used to pay for most Ameritech services, including basic local exchange telephone service offered by Ameritech Michigan, a wholly owned subsidiary of Ameritech Corporation. Ameritech Michigan accepted AmeriChecks as payment for basic local exchange service.

On May 23, 1997, the MCTA, an association of cable television providers, and others filed a complaint regarding the AmeriChecks promotion. The complaint alleged, inter alia, that Ameritech Michigan violated subsection 305(3) of the MTA, MCL 484.2305(3); MSA 22.1469(305)(3), by providing basic local exchange service in combination with unregulated cable television service at a price that did not exceed its total service long run incremental costs (TSLRIC). Subsection 305(3) provides:

> Until a provider has complied with section 304a, the provider of a rate regulated service shall not provide that service in combination with an unregulated service in section 401 or an unbundled or resold service under section 357 at a price that does not exceed the total service long run incremental cost of each service.

Subsection 304a(1), MCL 484.2304a(1); MSA 22.1469(304a)(1), provides that "[u]pon filing with and the approval of the commission, a basic local exchange provider shall restructure its rates for basic local exchange, toll, and access services to ensure that the rates are not less than the [TSLRIC] of providing each service." The MCTA's complaint requested that the PSC: (1) order Ameritech Michigan and its affiliates to terminate the AmeriChecks program and to refrain from further violations of subsection 305(3); (2) impose a fine as authorized by § 601 of the MTA, MCL 484.2601; MSA 22.1469(601); and (3) award costs and attorney fees for bringing the complaint.

The PSC found that Ameritech Michigan's decision to allow its customers to use AmeriChecks to offset rates for basic local exchange service resulted in a combination of that regulated service with unregulated cable television service, in contravention of MCL 484.2305(3); MSA 22.1469(305)(3). The PSC ordered Ameritech Michigan to cease and desist from further violations of the MTA and to pay the expenses, including attorney fees, incurred by the MCTA and the other complainants.

The standard of review for PSC orders is narrow and well defined. Pursuant to MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and rea-

sonable. *Michigan Consolidated Gas Co v Public Service Comm,* 389 Mich 624, 635-636; 209 NW2d 210 (1973). A party aggrieved by an order of the PSC bears the burden of establishing by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8). Const 1963, art 6, § 28 also applies and provides that a final agency order must be authorized by law and be supported by competent, material, and substantial evidence on the whole record. We give due deference to the PSC's administrative expertise and will not substitute our judgment for that of the PSC. *Attorney General v Public Service Comm,* 206 Mich App 290, 294; 520 NW2d 636 (1994).

Statutory interpretation is a question of law subject to review de novo. As a general rule, we will defer to the construction placed on a statute by the governmental agency charged with interpreting it, unless the agency interpretation is clearly erroneous. An agency's initial interpretation of new legislation is not entitled to the same measure of deference as is a longstanding interpretation. However, merely establishing that another interpretation of a statute is plausible does not satisfy a party's burden of proving by clear and convincing evidence that the PSC's interpretation is unlawful or unreasonable. *In re MCI Telecommunications Complaint,* 229 Mich App 664, 681-682; 583 NW2d 458 (1998), aff'd in part and rev'd in part 460 Mich 396; 596 NW2d 164 (1999).

On appeal, Ameritech Michigan argues that the PSC's order holding that it violated subsection 305(3) by accepting AmeriChecks is unlawful and unreasonable. Initially, it asserts that because it complied with subsection 304a, the PSC erred in applying subsection

305(3). The applicable rate structure was the same before the PSC's approval of the pricing method, and during the relevant period. Furthermore, Ameritech Michigan contends that regardless of the requirements of subsection 304a, no violation of subsection 305(3) occurred. Subsection 305(3) applies only in circumstances in which the same provider furnishes a combination of regulated and unregulated services. New Media is a wholly separate corporate entity, is not a "provider" as that term is defined in MCL 484.2102(cc); MSA 22.1469(102)(cc), and furnishes a service, cable television, over which the PSC has no regulatory jurisdiction. MCL 484.2401(1); MSA 22.1469(401)(1). Finally, Ameritech Michigan asserts that the PSC erred in finding that by accepting AmeriChecks, Ameritech Michigan offered basic local exchange service at a price below the TSLRIC for that service. The prices charged were the full tariff rates at all times.

We disagree. The PSC's approval of Ameritech Michigan's restructuring of its rates was not complete during the time Ameritech Michigan accepted AmeriChecks as payment for its regulated basic local exchange service. Thus, Ameritech Michigan was not in compliance with subsection 304a during the time relevant to this litigation. The PSC has only the powers granted to it by statute, *Union Carbide Corp v Public Service Comm*, 431 Mich 135, 146; 428 NW2d 322 (1988), and was without the statutory authority to approve Ameritech Michigan's rate restructuring on a retroactive basis.

The PSC's order finding that Ameritech Michigan violated subsection 305(3) is not unlawful or unreasonable. Ameritech Michigan, a "provider" as that

term is defined by subsection 2102(cc), furnishes basic local exchange service, a rate-regulated service. Because Ameritech Michigan had not complied with subsection 304a during the period relevant to this litigation, it was prohibited from offering its basic local exchange service in combination with an unregulated service. The plain language of subsection 305(3) does not require that the regulated service and the unregulated service be furnished by the same provider, or that both services be offered at a single price. To interpret subsection 305(3) in such a manner, as advocated by Ameritech Michigan, would allow a provider to circumvent the statute simply by joining with an affiliate to offer a regulated service in combination with an unregulated service. Such an interpretation would lead to an unreasonable result, which should be avoided whenever possible. *Michigan Trucking Ass'n v Public Service Comm (On Remand)*, 225 Mich App 424, 430; 571 NW2d 734 (1997).

To find that Ameritech Michigan violated subsection 305(3), the PSC was not required to, and did not, pierce the corporate veil of New Media. The PSC's finding that Ameritech Michigan and New Media were affiliated companies was supported by the undisputed evidence that both companies were subsidiaries of Ameritech Corporation, that both companies did business under the assumed name "Ameritech," and that both companies promoted a single corporate image. The PSC focused on Ameritech Michigan's acceptance of AmeriChecks as payment for a regulated service. The PSC's finding that Ameritech Michigan's acceptance of AmeriChecks resulted in the combining of Ameritech Michigan's regulated service with New Media's unregulated service in violation of subsection

305(3) was supported by testimony presented by a PSC staff witness. The PSC was entitled to rely on this testimony, notwithstanding the existence of contradictory evidence. *Great Lakes Steel v Public Service Comm*, 130 Mich App 470, 481-482; 344 NW2d 321 (1983). Finally, the PSC's finding that Ameritech Michigan's acceptance of AmeriChecks as payment for its basic local exchange service resulted in customers paying less than the TSLRIC for that service was supported by documentary evidence that demonstrated that application of one $10 AmeriCheck to a tariff rate of $10 to $13.25, depending on the plan, necessarily resulted in a charge below the TSLRIC for that plan.

The PSC's interpretation of subsection 305(3) is not longstanding and thus is entitled to less deference than usually is accorded to the interpretation of a statute by the agency charged with its enforcement. *In re MCI Complaint, supra,* 682. Nevertheless, Ameritech Michigan has not demonstrated by clear and convincing evidence that the PSC's interpretation or application of subsection 305(3) in this case is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8).

Next, Ameritech Michigan argues that the PSC improperly shifted the burden of proof by requiring it to overcome the conclusions contained in the Proposal for Decision authored by the hearing referee. We disagree. The burden of proof rests with the party bringing a complaint before the PSC. MCL 484.2203(3); MSA 22.1469(203)(3); 1992 AACS, R 460.17515. The Proposal for Decision becomes the final decision only in the absence of exceptions. MCL 24.281(3); MSA 3.560(181)(3). The PSC's opinion and order addresses

the exceptions filed by various parties and does not shift the burden of proof to Ameritech Michigan.

Finally, we reverse that portion of the PSC's order awarding attorney fees to the complainants. In Michigan, attorney fees may not be awarded unless specifically authorized by statute. Section 601 of the MTA, MCL 484.2601; MSA 22.1469(601), empowers the PSC to make whole ratepayers and others who have suffered an economic loss, but does not confer on the PSC the authority to award attorney fees. Furthermore, the fact that the MTA provides for an award of attorney fees if an opposing party's position is frivolous, MCL 484.2209(1); MSA 22.1469(209)(1), indicates that the Legislature could have provided for an award of attorney fees under § 601 if it had chosen to do so. *In re Complaint of Southfield*, 235 Mich App 523, 533-535; 599 NW2d 760 (1999).

Affirmed in part and reversed in part.