*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DAVID A. MAPLES,

        Plaintiff-Appellant,

v

STATE OF MICHIGAN,

        Defendant-Appellee.

FOR PUBLICATION
May 14, 2019
9:20 a.m.

No. 343394
Court of Claims
LC No. 17-000135-MZ

Before: SWARTZLE, P.J., and CAVANAGH and CAMERON, JJ.

CAMERON, J.

Plaintiff, David A. Maples, filed this lawsuit for compensation under the Wrongful Imprisonment Compensation Act (WICA), MCL 691.1751 *et seq.*, after his plea-based conviction for delivery of cocaine was reversed on appeal and the trial court dismissed the criminal charges. Maples now appeals the Court of Claims's order granting summary disposition[1] in favor of defendant, the State of Michigan, because Maples failed to show "new evidence" that satisfied the requirements under MCL 691.1755(1)(c). Finding no error in the Court of Claims's decision, we affirm.

## I. FACTS AND PROCEDURAL BACKGROUND

In August 1993, Maples, Lawrence Roberts, and James Murphy were arrested and charged with delivery of cocaine and conspiracy to deliver cocaine. The charges arose from a drug transaction that occurred when Maples and Roberts met Murphy at a bar. While at the bar, apparently unbeknownst to Maples and Roberts, Murphy sold cocaine to an undercover police officer. When Maples and Roberts left the bar together, they were pulled over and arrested. The charges against Roberts were eventually dismissed.

---

[1] MCR 2.116(C)(10) (no genuine issue of material fact).

Shortly after his arrest, Murphy wrote a letter to the trial court, explaining that Maples and Roberts had nothing to do with the cocaine sale. Murphy reiterated Maples's innocence during a February 1994 hearing on Murphy's entrapment motion, which Maples joined. During the hearing, Murphy testified that Maples was neither involved in nor aware of the cocaine sale.

Maples was not scheduled for trial until September 1995. Unsuccessful in his attempt to have his case dismissed for entrapment and on a speedy trial violation, Maples expressed his intent to call Murphy as a defense witness in Maples's trial. However, on the eve of trial, Maples learned that Murphy had accepted a plea offer from the prosecution that awarded him a reduced sentence in exchange for agreeing not to testify on Maples's behalf. Further, Maples's only other witness, Roberts, could not be located for trial. Maples then pleaded guilty to delivery of cocaine because he did not have any exculpatory witnesses available and his attorney assured him that he could still appeal the speedy trial issue. After Maples was sentenced to 10 to 20 years' imprisonment, Murphy executed affidavits in 1997 and 2007 in which he attested that Maples was never involved in the crimes alleged. Murphy's affidavits were consistent with his testimony from the February 1994 entrapment hearing.

Thereafter, Maples attempted to appeal the denial of his motion to dismiss for a speedy trial violation. A panel of this Court found that Maples had waived review of his claims when he pleaded guilty.[2] The Michigan Supreme Court denied leave to appeal. *People v Maples*, 459 Mich 867; 584 NW2d 738 (1998).

Maples then filed a petition for habeas corpus in the federal district court, raising issues of ineffective assistance of counsel and the denial of his right to a speedy trial. *Maples v Stegall* (*Maples I*), 340 F3d 433, 434, 436 (2003). The district court denied his petition, but it did not explicitly rule on Maples's ineffective assistance of counsel claim. *Id*. at 436. On appeal, the Sixth Circuit Court of Appeals held that trial counsel's performance was constitutionally deficient because counsel's advice to Maples—that he could pursue a speedy trial claim at the appellate level despite the unconditional guilty plea—was "patently erroneous." *Id*. at 439. However, the Sixth Circuit remanded the case back to the district court to analyze Maples's likelihood of success on his speedy trial violation claim in order to determine if there was the requisite prejudice to substantiate an ineffective assistance of counsel claim. *Id*. at 440-441.

On remand, the district court concluded that Maples's speedy trial claim had no merit, and thus, he could not succeed on his ineffective assistance of counsel claim. See *Maples v Stegall (Maples II)*, 427 F3d 1020, 1023 (2005) (discussing the district court's holding). However, the Sixth Circuit concluded, *inter alia*, that although evidence that Roberts would have provided beneficial testimony was weak, evidence to the contrary was weaker, and had Roberts been available for trial, he would have testified on Maples's behalf. *Id*. at 1032-1033. Thus, because Roberts could no longer be located by the time of trial, Maples was prejudiced by the delay. *Id*. at 1033. The court also determined that Murphy's unavailability to testify because of his plea agreement prejudiced Maples. *Id*. at 1034. The court noted that Murphy had given

---

[2] *People v Maples*, unpublished per curiam opinion of the Court of Appeals, issued November 4, 1997 (Docket No. 196975), p 1.

testimony that favored Maples at the entrapment hearing in February 1994. *Id*. Because both Roberts and Murphy would have testified favorably for Maples, but both were unavailable by the time of trial, the *Maples II* court concluded that Maples suffered actual prejudice from the delay. *Id*. Thus, the Sixth Circuit held that Maples's speedy trial violation claim had merit, which meant that he suffered a violation of his right to the effective assistance of counsel. *Id*. Accordingly, the *Maples II* court reversed the district court's decision and remanded the case with directions to issue a writ of habeas corpus. *Id*.

After the district court's issuance of the writ of habeas corpus, the state criminal court dismissed Maples's criminal charges and vacated his conviction in 2006. Approximately 11 years later, Maples filed his WICA complaint in the Court of Claims.

Maples maintained that he met the WICA requirements for compensation. Specifically, he claimed that "new evidence," in the form of Murphy's testimony, affidavits, and letter, as well as Roberts's proposed testimony, demonstrated Maples's innocence and had resulted in the reversal of his conviction and dismissal of his charges. The Court of Claims noted that the WICA defined "new evidence" to include evidence that was not presented at "the proceedings leading to the plaintiff's conviction," that Maples had joined in Murphy's entrapment motion, and that Murphy had testified at the entrapment hearing that Maples had no knowledge of the cocaine sale and did not participate in it. Concluding that the entrapment hearing was a pretrial hearing that led to Maples's conviction and that Murphy's testimony at the entrapment hearing was the same evidence that Maples was now attempting to use to support his WICA claim, the Court of Claims determined that by definition, it was not "new evidence" under the WICA. Further, the court concluded that counsel's constitutionally deficient performance and Maples's speedy trial claim resulted in his release, not the evidence of Maples's innocence. This appeal followed.

## II. ANALYSIS

Maples argues that the Court of Claims erred in granting the State of Michigan's motion for summary disposition because he met the requirements for compensation under the WICA. We disagree.

"A trial court's decision regarding a motion for summary disposition is reviewed de novo." *Old Kent Bank v Kal Kustom, Inc*, 255 Mich App 524, 528; 660 NW2d 384 (2003). A motion for summary disposition pursuant to MCR 2.116(C)(10) tests whether there is factual support for a claim and is appropriate when there is no genuine issue concerning any material fact. *Universal Underwriter's Group v Allstate Ins Co*, 246 Mich App 713, 720; 635 NW2d 52 (2001). When deciding a motion for summary disposition pursuant to MCR 2.116(C)(10), we must consider all pleadings, affidavits, depositions, and other documentary evidence in the light most favorable to the nonmoving party. *Cowles v Bank West*, 476 Mich 1, 32; 719 NW2d 94 (2006).

We also review de novo issues of statutory interpretation. *In re Mich Cable Telecom Ass'n*, 239 Mich App 686, 690; 609 NW2d 854 (2000). When interpreting a statute, our goal "is to ascertain and give effect to the intent of the Legislature." *Portelli v IR Constr Prods Co, Inc*, 218 Mich App 591, 606; 554 NW2d 591 (1996). Undefined terms in a statute "must be given

their plain and ordinary meanings, and it is proper to consult a dictionary for definitions." *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004). This Court must avoid interpreting a statute in a way that would make any part of it meaningless or nugatory. *Sweatt v Dep't of Corrections*, 468 Mich 172, 183; 661 NW2d 201 (2003).

To prevail on a WICA claim, the plaintiff must prove by clear and convincing evidence all of the following:

> (a) The plaintiff was convicted of 1 or more crimes under the law of this state, was sentenced to a term of imprisonment in a state correctional facility for the crime or crimes, and served at least part of the sentence.

> (b) The plaintiff's judgment of conviction was reversed or vacated and either the charges were dismissed or the plaintiff was determined on retrial to be not guilty. However, the plaintiff is not entitled to compensation under this act if the plaintiff was convicted of another criminal offense arising from the same transaction and either that offense was not dismissed or the plaintiff was convicted of that offense on retrial.

> (c) *New evidence demonstrates that the plaintiff did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis of the conviction, results in the reversal or vacation of the charges in the judgment of conviction or a gubernatorial pardon, and results in either dismissal of all of the charges or a finding of not guilty on all of the charges on retrial.* [MCL 691.1755(1)(a) to (c) (emphasis added).]

WICA defines "new evidence" as "any evidence that was not presented in the proceedings leading to the plaintiff's conviction, including new testimony, expert interpretation, the results of DNA testing, or other test results relating to evidence that was presented in the proceedings leading to plaintiff's conviction." MCL 691.1752(b).

In sum, there are four requirements under MCL 691.1755(1)(c) that Maples must satisfy before he is entitled to compensation under the WICA: (1) the proffered evidence must meet the definition of "new evidence" as defined under MCL 691.1752(b); (2) the new evidence must demonstrate that Maples did not perpetrate the crime and was not an accomplice or accessory to the acts that were the basis for the conviction; (3) the new evidence must result in the reversal or vacation of the charges in the judgment of conviction; and (4) the new evidence must result in dismissal of all the charges or a finding of not guilty on the all of the charges on retrial. Thus, we must first determine whether the evidence presented is "new evidence" under MCL 691.1752(b). If Maples satisfies this definition, we must then determine whether he has met the remaining three elements of MCL 691.1755(1)(c).

Maples argues that he has proffered two major categories of exculpatory material that constitute "new evidence": (1) Murphy's testimony at the entrapment hearing, his two affidavits, and his letter to the trial court; and (2) Robert's proposed exculpatory testimony. We conclude that neither form of evidence meets the definition of "new evidence" under MCL 691.1752(b).

We turn first to Murphy's testimony at the entrapment hearing, his affidavits, and his letter to the trial court. The substance of this evidence was presented to the trial court at a proceeding prior to Maples's guilty plea—the entrapment hearing. Under MCL 691.1752(b) "new evidence" cannot have been "presented in the proceedings leading to the plaintiff's conviction." Thus, if an entrapment hearing is a "proceeding leading to the plaintiff's conviction," Maples cannot use the material disclosed at that hearing as "new evidence" of his innocence. The WICA does not define "proceedings." The plain meaning of "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment." *Black's Law Dictionary* (10th ed). In particular, a "criminal proceeding" is further defined as "[a] judicial hearing, session, or prosecution in which a court adjudicates whether a person has committed a crime or, having already fixed guilt, decides on the offender's punishment; a criminal hearing or trial." *Black's Law Dictionary* (10th ed). Additionally, "leading" is not defined by the WICA. Merriam-Webster's Collegiate Dictionary defines "leading" as "providing direction or guidance." *Merriam-Webster's Collegiate Dictionary* (11th ed). Thus, in order for the proposed evidence to be considered "new evidence," it could not have been presented during the regular and orderly progression of the lawsuit, and must have provided guidance or direction for the conviction.

The exculpatory material made part of the entrapment hearing cannot now be considered "new evidence." Murphy and Maples were both present at the entrapment hearing, and Murphy testified that Maples was not involved in the drug deal. This is the same testimony that Maples now seeks to admit as "new evidence." There is no serious dispute that the entrapment hearing was a proceeding that occurred during the judicial progress of Maples's criminal action. The question, however, turns on whether the entrapment hearing was a proceeding that provided guidance or direction towards the conviction. We conclude that it was. Maples asserted an entrapment defense that, if granted, would have resulted in the dismissal of all charges. The trial court denied the motion and allowed the case to proceed to trial. Thus, the trial court's denial of Maples's entrapment defense certainly provided guidance and direction as to his ultimate conviction, and therefore, the pretrial entrapment hearing was a "proceeding leading to the plaintiff's conviction." MCL 691.1752(b). Because Maples seeks to admit the same testimony that was presented during a proceeding leading to his conviction, we hold that Murphy's testimony, including the affidavits and the letter reiterating the substance of the testimony at the entrapment hearing, is not "new evidence" under WICA.

Maples, however, urges this Court to adopt a much narrower reading of the phrase: "proceedings leading to the plaintiff's conviction." MCL 691.1752(b). According to Maples, the phrase should be "best understood as looking at whether the evidence was presented in that part of the case in which guilt was determined." Ultimately, Maples's reading of the statute would constrain "new evidence" to that which was presented at trial or, as in this case, a plea hearing where guilt was determined. We decline to adopt such a narrow interpretation because if the Legislature wanted to narrow the definition of "new evidence" to that which was not presented at a trial or plea hearing, it could have simply used such language. Instead, the Legislature opted for a much broader phrasing—"the proceedings leading to the plaintiff's conviction." Therefore, Maples's argument is without merit.

Next, we turn to Roberts's purported exculpatory testimony. Maples has neither provided the substance of that testimony nor indicated whether Roberts could even be located to provide

any testimony. Maples has not submitted a letter or affidavit from Roberts as he did with Murphy. Maples argues that he did in fact supply evidence of Roberts's testimony in the form of the Sixth Circuit's opinion in *Maples II*. But even considering that opinion, the Sixth Circuit similarly did not give any indication of the actual substance of Roberts's testimony. The Sixth Circuit explained that Maples represented that Roberts told him that he would testify on his behalf. *Maples II*, 427 F3d at 1032. It also referenced the letter that Murphy wrote in which Murphy indicated that Roberts was at the scene and had nothing to do with the cocaine sale. *Id*. Roberts himself has provided no documentation expressing what his testimony would entail. The only "evidence" that Maples provided was the Sixth Circuit's findings that Roberts *could* have provided beneficial testimony. We conclude that Roberts's supposed testimony was not "new evidence." Because Maples has not met the "new evidence" requirement under MCL 691.1752(b), we need not address the remaining elements. Accordingly, we hold that the Court of Claims did not err in granting the State of Michigan's motion for summary disposition.

Affirmed.


/s/ Thomas C. Cameron
/s/ Brock A. Swartzle
/s/ Mark J. Cavanagh